UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| SHANNON MONTREAL DUNN | CIVIL ACTION NO. 25-224-P |
| VERSUS | JUDGE DOUGHTY |
| SGT. ANDERSON, ET AL. | MAGISTRATE JUDGE HORNSBY |

REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Shannon Montreal Dunn ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on February 21, 2025. Plaintiff is incarcerated at the Caddo Correctional Center in Shreveport, Louisiana, and claims his civil rights were violated by prison officials. He names Sgt. Anderson, Chief Darby, Dr. Nelson, Nurse She Murphy, Nurse Randy Leone, Sgt. D. Williams, and the Caddo Correctional Center as defendants.

On August 16, 2024, Nurse Murphy gave Plaintiff a TB shot. He claims Nurse Murphy administered the shot incorrectly. Plaintiff claims that because of the TB shot being administered incorrectly, he is partially disabled, has permanent nerve damage, and suffers painful spasms periodically. He claims that at times it feels like he is being stabbed by little burning needles and at other times he cannot feel anything.

Plaintiff states he made his first complaint on September 18, 2024, and began to file grievances on November 17, 2024. Sgt. Anderson and Chief Darby told Plaintiff to make a sick call request. He claims Sgt. D. Williams also told him to make a sick call request after he witnessed the discoloration of his fingernails. He claims that both the medical staff and the correctional staff were notified of his condition.

On November 29, 2024, Ms. Monroe asked Plaintiff if he wanted to go to sick call in the infirmary, and he replied yes. He claims LPN Randy Leone talked with him and briefly examined his arm. Plaintiff told Nurse Leone that his right arm had not been right since he received his TB shot because Nurse Murphy hit a nerve in his arm. He told Nurse Leone that his arm gets cold and feels bad most of the day and at times he cannot sleep on it. He also told Nurse Leone that he loses feeling at times in his arm and he has pain at other times in his arm. He claims Nurse Leone told him that Nurse Murphy did not injure his arm. He told Nurse Leone that he was in pain and needed to see a doctor. Nurse Leone then told him that he was going to place him on the doctor's list and gave him Tylenol for seven days for the pain.

On December 6, 2024, Dr. Nelson examined Plaintiff's right arm. He told Dr. Nelson that it hurt when he rubbed his arm. He told Dr. Nelson that he had loss of feeling in his arm at times and sharp burning pains at other times. He also told Dr. Nelson to look at his fingertips because they appeared black. Plaintiff claims Dr. Nelson told him that Nurse Murphy damaged the vein in his arm and that he had permanent nerve damage. Dr. Nelson placed him on a medication for three months to see if it would help the pain in his arm. He claims Dr. Nelson gave him Cymbalta which is for anxiety and depression.

Sometime between January and April of 2025, Plaintiff went to Ochsner Hospital concerning cancer. Plaintiff told the doctor that his vein was blown out when he received a TB shot. He claims the doctor examined him and told him that he had permanent nerve damage in his arm.

On April 19, 2025, Plaintiff made a sick call request because he felt faint and fatigued. He further complained that for two days his arm was locking up and numb like he had poor circulation of blood flow. He complained that he was seeing spots. He also complained that when his arm was not numb, he had a burning pain shooting up his arm that spread to his chest. He complained that he was in excruciating pain. Plaintiff was told on April 20, 2025, that he would be seen at sick call.

Plaintiff claims that at sick call for his arm on April 20, 2025, he was told that he would be placed on the doctor's list for April 25, 2025. He claims that he was not on the doctor's list for April 25, 2025.

On May 7, 2025, Plaintiff made a sick call request. He received a response to his request which stated that he was taking IBU for pain. He complains that he was not allowed to see the doctor or go to the hospital for the pain in his arm.

On May 9, 2025, Plaintiff made a sick call request. He was told that he was currently taking indomethacin which is a medication that is an anti-inflammatory and used for pain. Plaintiff complains that he should see a doctor about his arm.

On May 14, 2025, Plaintiff made a sick call request in which he asked to see a doctor for his arm pain. He claims that at this time, he was not on medication for pain. On May 15, 2025, he was told that he would be seen at sick call.

On May 15, 2025, Plaintiff went to the infirmary because of his arm pain. He was seen by Nurse Leone. Plaintiff told Nurse Leone that he needed to see the doctor for his arm. He claims Nurse Leone told him that he was not putting him on the doctor's list because the doctor had seen him twice about his arm. He also claims Nurse Leone told him that he was not giving him pain medication for his arm. Plaintiff then walked out of the room. He claims Nurse Leone asked for a refusal for Plaintiff to sign. Plaintiff said he was not going to sign the refusal because he did not refuse treatment. He claims Nurse Leone told Mrs. Herring that it had been almost a year since Plaintiff had received the TB shot and he was not going to put him on the doctor's list or give him something for pain. Plaintiff complained to Mrs. Herring that he had not been taken to the hospital for his arm and she told him that she could not do anything about that.

Plaintiff states that for every sick call about his arm in April and May of 2025, he requested to see a doctor. He also requested to be taken to the hospital. He claims he repeatedly tells the staff that he needs to see a doctor because he has poor blood circulation in his right arm, his fingertips on his right hand have black lines in them, and his fingertips are black. He claims all these things were caused by the TB shot he received on August 16, 2024.

Plaintiff complains that he should have been transported to the hospital so he could be properly diagnosed, treated, and given correct medications for his arm. He claims he should have been allowed to see a doctor outside of the Caddo Correctional Center facility. He argues that if his complaints had been acknowledged sooner, his new arm problems may not have occurred.

Accordingly, Plaintiff seeks monetary compensation.

## LAW AND ANALYSIS

Plaintiff claims Nurse Murphy incorrectly administered his TB shot and permanently damaged a nerve in his forearm. He claims he has been denied proper medical treatment for the damage caused by the TB shot. He claims he should have been transported to the hospital, seen by a doctor, and given pain medication.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of, or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321,

2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Plaintiff was seen by Nurse Leone on November 29, 2024. He was examined, placed on the doctor's list, and given medication for pain. Plaintiff was seen by Dr. Nelson on December 6, 2024. He was examined and given the medication Cymbalta. Plaintiff was seen by a doctor at Ochsner Hospital concerning cancer between January and April of 2025. He told the doctor about his arm and the doctor examined him. Plaintiff was seen at sick call on April 20, 2025. Plaintiff made a sick call on May 7, 2025, and the staff comment was that he was on IBU for pain. Plaintiff made a sick call on May 9, 2025, and the staff comment was that he was taking indomethacin for inflammation and pain. Plaintiff was

Page **6** of **9**

seen by Nurse Leone on May 15, 2025. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Furthermore, Plaintiff does not allege how the alleged delay in medical treatment was based on deliberate indifference.

Plaintiff disagrees with the treatment Defendants provided him. He claims he should have been transported to the hospital, seen by a doctor at his sick call visits and a doctor outside of the prison infirmary, and given pain medication. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's complaint should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy

shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 18th day of July 2025.

Mark L. Hornsby
U.S. Magistrate Judge